| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-----------------------------------------------------------x<br>In re:<br><br>MARSHALL JABLON and<br>MARCIA JABLON,<br><br>              Debtors.<br>-----------------------------------------------------------x<br>SOVEREIGN BANK,<br><br>              Plaintiff<br><br>    -versus-<br><br>MARSHALL JABLON and<br>MARCIA JABLON,<br><br>              Defendants.<br>-----------------------------------------------------------x | Hearing Date:<br>July 15, 2003<br>11:30 a.m.<br><br><br>Case No. 01-12191 (ASH)<br><br>Chapter 7<br><br><br><br>Adv. Proc. No. 01-5080A |

**JOINT MOTION OF PLAINTIFF AND DEFENDANTS PURSUANT TO
BANKRUPTCY RULES 7041 AND 9019 AND LOCAL BANKRUPTCY
RULE 4007-2 FOR APPROVAL OF SETTLEMENT AGREEMENT**

TO:    THE HONORABLE ADLAI S. HARDIN, JR.
         UNITED STATES BANKRUPTCY JUDGE

Sovereign Bank, a pre-petition creditor ("Sovereign" or "Plaintiff"), and Marshall and Marcia Jablon (collectively with Sovereign, the "Parties"), joint-debtors, in the above-captioned chapter 7 case, and co-defendants in this adversary proceeding (collectively, the "Debtors" or the "Defendants"),[1] by and through their respective attorneys, Weir and Partners, LLP and Klestadt & Winters LLP, as and for their joint motion, pursuant to Rules 7041 and 9019 of the Federal Rules of

---

[1] The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) (I) and (J).

185073-1                              1

Bankruptcy Procedure and Local Bankruptcy Rule 4007-2, for an order approving the attached settlement agreement, resolving this adversary proceeding, respectfully represents as follows:

BACKGROUND

Commencement of Case, Extension of Deadlines, Preliminary Proceedings

1. This case was commenced on April 13, 2001 ("Petition Date") by the Debtors' filing of a joint voluntary petition for relief under chapter 7 of the Bankruptcy Code. Jeffrey L. Sapir is the duly qualified chapter 7 trustee (the "Trustee").

2. The first date set for the section 341(a) meeting of creditors was June 1, 2001. Accordingly, the deadline for filing a complaint objecting to the Debtors' discharge or to determine the dischargeability of particular debts became July 31, 2001. Fed.R.Bank.P. 4004(a) (discharge objections); Fed.R.Bankr.P. 4007(c) (dischargeability determinations).

3. By stipulations "so ordered" by the Court, the Debtors consensually extended the time within which parties who had expressed an interest in possibly commencing discharge and/or dischargeability litigation to file their complaints, if any.

4. Bronx Open Imaging, LLC's deadline to file a complaint objecting to the Debtors' discharge or to the dischargeability of a particular debt was extended to September 30, 2001; Sovereign's deadline was extended to October 1, 2001; and the Trustee's time to object to the Debtors' discharge was extended to December 30, 2001.

5. On October 1, 2001 Sovereign filed a complaint (the "Complaint") objecting to the Debtors' discharge and objecting to the dischargeability of a particular pre-petition debt due and owing to Sovereign.[2] Debtors failed to answer the Complaint timely and default was entered

---

[2] On August 28, 2000, Sovereign filed suit against the Debtors in the United States District Court for the District of New Jersey at Case No. 00-cv-4420 in which Sovereign sought judgment against the Debtors for their default under certain personal guarantees. Judgment by default was entered against the Debtors in the amount of $5,036,722.17 on January 17, 2001 (the "Judgment").

by the Clerk on December 26, 2001.

6. By motion dated March 25, 2002, the Debtors moved to dismiss the complaint on various substantive and procedural grounds, including lack of timely service of the Complaint. Sovereign objected to the motion.

7. Following a hearing held on April 10, 2002, the Court deemed service of the complaint proper and denied the motion, but vacated the Debtors' default to permit the Debtors to file an answer.[3] Pursuant to the Court's April 10, 2001 Scheduling Order, on April 19, 2001, each of the Debtors served and filed an answer denying the material allegations of the Complaint.

8. Between May and August, 2001, the parties engaged in extensive discovery proceedings preparing for trial, and jointly prepared and filed the final Pretrial Order on August 29, 2002.

Summary of Complaint and Trial Defenses

9. The Complaint alleges, among other things, misconduct engaged in by the Defendants while acting as officers and directors of a company called Federal Financial Group, Inc. ("FFG"), including personal participation in a fraud involving an FFG client, as well as a continuation of the alleged misconduct in the Defendants' bankruptcy case.

10. By way of history, FFG was a factoring company. According to the Complaint, FFG contracted to purchase invoices from Aldo Coutures ("Aldo"). The Debtors allegedly conspired with Aldo to cause FFG to purchase fraudulent invoices from Aldo with a line of credit provided to FFG by Sovereign. Aldo would then forward to the Debtors, rather than to FFG, what was made to appear to be a legitimate payment on the invoice. As part of this alleged

---

[3] Defendants' request for an interlocutory appeal of this decision was denied by the District Court on September 10, 2002.

185073-1                                                                           3

fraudulent scheme, the Debtors allegedly falsified FFG's books and records by inflating its accounts receivable and falsely characterizing the FFG/Aldo transactions. The Debtors allegedly then provided the false information to the Plaintiff. This, in effect, kept the line of credit in place, thereby allowing FFG to continue factoring Aldo and the fraudulent invoices and enabling the Debtors to continue their employment with and ownership interest in FFG..

11. FFG defaulted on its outstanding loan obligations to Sovereign, as did the Debtors. Subsequent to the entry of the Judgment, the Debtors filed this bankruptcy case.

12. The Schedules and Statement of Financial Affairs were filed on April 13, 2001 (collectively, the "Schedules").

13. Counts I and III of the Complaint aver, respectively, that the Debtors knowingly concealed and failed to explain the loss of the fraudulently obtained and/or converted proceeds of their alleged fraud for their own personal use, for which they should be denied their discharge under sections 727(a)(2)(A) and 723(a)(5) of the Bankruptcy Code. The Defendants' argued, as to count I, that the subject property was not owned by the Debtors and therefore could not be concealed and, as to count II, because the Debtors did not own the subject property, its alleged loss or diminution does not require any explanation from the Debtors.

14. Count II seeks to deny the Debtors' discharge under section 727(a)(3) of the Bankruptcy Code by alleging that Debtors falsified FFG's books and records for their own personal benefit and failed satisfactorily to explain the loss of funds they received from FFG on account of their dealings with Aldo. The Defendants' defense to be litigated at trial is that their discharge cannot be denied because the relevant statute exclusively is concerned with the Debtors' material business transactions, not transactions between non-debtor parties.

15. Counts IV and V seek a determination that the Debtors' debt to the Plaintiff is

non-dischargeable as a debt for money obtained by the use of a materially false written financial statement under §523(a)(2)(B) of the Bankruptcy Code (Count IV)in their capacity as officers, directors, and shareholders of FFG, and as a debt for willful and malicious injury to the Plaintiff under §523(a)(6) of the Bankruptcy Code (Count V) by virtue of Debtors' failure to disclose information about their dealings with Aldo and their concealment of personal assets (including by misstatements of financial information on their Schedules).

16. The Defendants' trial defense as to Count IV is that a non-dischargeability judgment cannot be entered on Count IV because the relevant debt arose from a contractual agreement to personally guarantee the financial obligations of FFG, not for money or property the Debtors received from the Plaintiff through using a materially false financial statement. As to Count V, among the Defendants' trial defense is that a non-dischargeability judgment cannot be entered on Count V because the allegations fail to satisfy the established standards for alleging willful and malicious injury and because the allegations, if proven, could not possibly establish that the Debtors, as personal guarantors of FFG's debt, acted maliciously to financially harm the Plaintiff inasmuch as any such harm would be directly visited upon the Debtors through their personal guarantees.

17. The parties relative factual and legal positions are more succinctly set forth in the Pre-Trial Order which is incorporated herein by reference and made a part hereof.

<u>Settlement and Compromise Terms</u>

18. Following motion practice by the parties, lengthy discovery proceedings, and extensive settlement discussions among the parties, the parties have agreed to avoid the further expense, inconvenience, disruption, delay and uncertainty of litigation and have consensually agreed to resolve and terminate, upon Court approval, this adversary proceeding on the terms

fully set forth in the attached Settlement Agreement and summarized below.

19. The Settlement Agreement requires the Debtors to deliver to Sovereign the sum of $25,000 (the "Settlement Amount") (which amount has been deposited into escrow pursuant to an escrow agreement among the parties) and to grant to Sovereign a mortgage on Mrs. Jablon's real property in the amount of $500,000.[4] The parties understand that the Sovereign Mortgage will be in third position behind two pre-existing mortgages on the property.

20. The Settlement Agreement further provides that, upon payment of the Settlement Amount and entry of a final order approving the Settlement Agreement, Sovereign shall cause this adversary proceeding to be dismissed. The parties understand and intend that the Settlement Amount shall be paid in consideration of Sovereign's dismissal of the section 523 counts of the Complaint.

RELIEF REQUESTED

21. The Parties respectfully request that this Court enter an order approving the Settlement Agreement and granting such other, further or different relief as is just and appropriate.

DISCUSSION

22. In the Second Circuit, a creditor's adversary proceeding objecting to a debtor's discharge may be dismissed at the plaintiff's instance provided that adequate notice is given to effected parties and the chapter 7 trustee and the court order approving dismissal contains "terms and conditions which the court deems just." Fed.R.Bank.P. 7041; see State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1312-13 (2d Cir. 1996) (acknowledging that dismissal of section 727 proceedings upon proper terms and conditions is consistent with Bankruptcy

---

[4] Mrs. Jablon purchased the equity in her residence from the Trustee.

Rules); Hass v. Hass (In re Hass), 273 B.R. 45, 54 (Bankr. S.D.N.Y. 2002) (Hardin, J.) (holding that section 727(a) proceedings may be compromised upon proper notice and upon terms the Court deems proper).

23. Where as here, litigants agree to settle litigation involving both section 523(a) and section 727(a) claims, Bankruptcy Courts traditionally scrutinize with great care the settlement agreement for terms and conditions that are "just." For example, in Russo v. Nicolosi (In re Nicolosi), 86 B.R. 882 (Bankr. W.D. La. 1988), the Bankruptcy Court refused to approve a proposed settlement in which the plaintiff proposed to withdraw her complaint under sections 523(a) and 727(a) in exchange for consideration valued at more than $400,000 because the court held that the section 523(a) claims lacked merit. See id. at 888.

24. Unlike in Nicolosi, Sovereign's claims (while disputed by the Debtors) have already been found worthy of consideration by this Court's decision to deny the Debtors' motion to dismiss the Complaint. Consequently, there can be no concern that Sovereign is wrongfully extracting compensation from the Debtors through the assertion and subsequent compromise of frivolous causes of action.

25. Moreover, while the Nicolosi court expressly left open the question "[w]hether there can ever be a compromise of an objection to discharge that would involve receipt of compensation . . by a creditor," this Court squarely decided the issue in Hass v. Hass (In re Hass), 273 B.R. 45 (Bankr. S.D.N.Y. 2002) (Hardin, J.), permitting such compromises upon compliance with Bankruptcy Rule 7041[5:]

---

[5] Bankruptcy Rule 7041 provides:
> Rule 41 F.R.Civ.P. applies in adversary proceedings, except that a complaint objecting to the debtor's discharge shall not be dismissed at the plaintiff's instance without notice to the trustee, the United States trustee, and such other persons as the court may direct, and only on order of the court containing terms and conditions which the court deems proper.

Indeed, where a creditor settles a Section 523(a) claim and also seeks dismissal of his Section 727(a) claim . . . it may be inferred that the dismissal was at least in part a *quid pro quo* of the settlement.[] But that does not bar a creditor from settling his Section 523(a) claim and abandoning his Section 727(a) claim (which he has no further incentive to prosecute), because other creditors and the Chapter 7 trustee will receive full disclosure and an opportunity to prosecute the Section 727(a) claim through the mechanism of Bankruptcy Rule 7041.

Id. at 56. (Footnote omitted).

26. For similar reasons, the proposed Settlement Agreement does not run afoul of Local Bankruptcy Rule 4007-2(a). The Local Rule states:

> (a) Withdrawal of Complaint. In the event of the withdrawal of a complaint objecting to discharge or failure to prosecute an adversary proceeding objecting to discharge, no discharge shall be granted unless the debtor shall make and file an affidavit and the debtor's attorney shall make and file a certification that no consideration has been promised or given, directly or indirectly, for the withdrawal or failure to prosecute.

27. The purpose of Local Bankruptcy Rule 4007-2(a) is to prevent *sub rosa* settlements in which a plaintiff receives undisclosed compensation from a debtor to withdraw an objection to discharge without providing interested parties, or the Bankruptcy Court, an opportunity to review the settlement. Hass v. Hass (In re Hass), 273 B.R. 45, 56-57 (Bankr. S.D.N.Y. 2002) (Hardin, J.); see also Local Bankruptcy Rule 4007-2(b) (Bankruptcy Court must review and approve proposed settlements of adversary proceedings).

28. The Proposed Settlement agreement fully discloses the terms and conditions of settlement, including the proposed payment terms, thus permitting interested parties to participate in the approval process and allowing the Court to conduct the review mandated by Local Rule 4007-2(a) and Bankruptcy Rule 9019.[6] The Parties respectfully submit that the

---

[6] The Debtors and Debtors' counsel respectfully submit that no Local Rule 4007-2(a) affidavit and certification is required in this proceeding. This Court has previously instructed that "Local Bankruptcy Rule 4007-2(a) cannot be invoked . . . in at least two circumstances [including] "where the creditor files a complaint asserting causes of action under Sections 523(a)

proposed settlement is fair and reasonable, contains terms and conditions that are just, and does not run afoul of either Bankruptcy Rule 7041, nor of Local Bankruptcy Rule 4007-2.

## MEMORANDUM OF LAW

29. In light of the authorities contained and discussed herein, the Parties respectfully submit that the requirement of Local Rule 9013-1(b) to file a memorandum of law be deemed satisfied, or alternatively be waived.

## NO PREVIOUS APPLICATION

30. No previous application for the relief requested herein has been made to this or any other Court.

## NOTICE

31. In accordance with Bankruptcy Rule 7041, notice of this motion has been provided to the Office of the United States Trustee, the Chapter 7 Trustee and all creditors. The Parties respectfully submit that no further notice need be given.

---

and 727(a) and, upon obtaining a settlement of his 523(a) claim, seeks to withdraw or dismiss the 727(a) claims pursuant to Bankruptcy Rule 7041." Hass v. Hass (In re Hass), 273 B.R. 45, 57 (Bankr. S.D.N.Y. 2002).

185073-1                                                            9

WHEREFORE, the Parties respectfully request entry of an order (1) approving the Settlement Agreement in its entirety and (2) granting such other, further and different relief as the Court deems just and equitable.

Dated: New York, New York
July 2, 2003

    KLESTADT & WINTERS, LLP
    Attorneys for the Debtors

By: /s/ Wayne D. Holly
    Wayne D. Holly (WH-1538)
    381 Park Avenue South, 12th Floor
    New York, New York 10016
    (212) 972-3000
    p

WEIR & PARTNERS, LLP
Attorneys for Sovereign Bank

By: /s/ Bonnie Golub
    Bonnie Golub (BG- 1317)
    The Widener Building, Suite 500
    1339 Chestnut Street
    Philadelphia, PA 19107
    (215) 665-8181